Plaintiff Pro Se

Jacob Ryan Olson
9225 NE Thompson Street
Portland, Oregon 97220
(408) 390-9355

FILED06 JUL '18 14:36USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACOB RYAN OLSON,

Plaintiff,

vs.

PATRICK ALLEN (in His capacity as Acting Director of the Oregon Health Authority), and OREGON HEALTH AUTHORITY (an agency of the State of Oregon),

Defendants.

Civil Action No. 3:18-CV-1208-SB

**COMPLAINT**

Jury Trial Demanded

(Federal Questions; Amount in Controversy over $75,000)

**COMPLAINT**

1. Comes Now Jacob Ryan Olson, the Plaintiff in the above-styled action, and appearing Pro Se herein, brings this action for damages and other legal and equitable relief arising out of Defendants' violations of federal and state civil rights laws proscribing discrimination in accommodations, based upon an actual or perceived disability, defamation and defamation per se, intentional infliction of emotional distress, quantum meruit, unjust enrichment, account stated and action on an account, and breach of contract, alleging the following facts and claims:

2. Plaintiff seeks declaratory, injunctive and other equitable relief, and compensatory and punitive damages, based on Defendants' discrimination against Plaintiff Jacob Ryan Olson in violation of

Title I of the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 et seq. ("Title I"). Additionally, Plaintiff seeks declaratory, injunctive and other equitable relief, and compensatory and punitive damages based on Defendants' discrimination and tortious actions committed against him. Jurisdiction is founded on the aforementioned statutory provisions. Plaintiff further invokes the concurrent jurisdiction of this Court to consider claims arising under Oregon Revised Statutes, and Oregon common law, for which jurisdiction is based on the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367.

## I. SUMMARY OF ALLEGATIONS

3. The Federal Medicare statute, Title XVIII of the Social Security Act, is codified as 42 U.S.C. § 1395 et seq. It authorizes the establishment by states of medical assistance programs for people with disabilities who meet certain eligibility requirements. These medical assistance programs are jointly funded by the federal and state governments, and are designed by the states within the framework of options and requirements established under the Medicare statute. Plaintiff Jacob Ryan Olson is a person intended to benefit from such medical assistance programs.

4. The Oregon State Hospital (hereinafter "OSH") is located in Salem, Oregon, and is the primary state-run psychiatric Hospital in the State of Oregon.

5. On or about January 22, 2016, Plaintiff Jacob Ryan Olson, a person with severe mental illness was civilly committed to Adventist Hospital in Portland, Oregon, following civil commitment proceedings in Multnomah County Circuit Court, and was subsequently transferred to OSH on March 14, 2016. The civil commitment order was extended on July 12, 2016, and again on January 10, 2017. Plaintiff was released from the care and custody of OSH on July 14, 2017.

6. On March 14th, 2016, when Plaintiff first arrived at OSH from Portland Adventist Hospital, his body was found to be extensively covered in bruises. These bruises occurred on or about March 8, 2016, when, in the care, custody and control of Portland Adventist, Plaintiff had received multiple bruises from hospital staff, was subjected to a 5-point hold for 3 hours, and was then subjected to seclusion and restraint for 3 hours more. Despite these obvious injuries, Plaintiff was denied competent medical care for his injuries, and remained sick, sore and in pain for a period of several weeks thereafter. This followed a period

of 60 days, during which Plaintiff had been left secluded in a double-locked cell, and denied visitation with either of his parents for the majority of that period.

7. On numerous occasions thereafter, including but not limited to July 13, 14, and 17, September 3, 10, and 27, and October 16 and 17, 2016, Plaintiff was subject to seclusion and restraint. Specifically, on April 4, 2016 Plaintiff was attacked by several staff members employed by Defendant Oregon Health Authority. As a direct, proximate and foreseeable result of this unprovoked attack, Plaintiff's ribs were injured, he was denied competent medical care for his injuries, and remained sick, sore and in pain for a period of several weeks thereafter. Upon information and belief, Plaintiff was subject to seclusion and restraint on substantially more days as well, as will be developed through discovery and fully set forth at trial.

8. On September 6, 2016, the staff at OSH, without legal right or cause to do so, and in defiance of Plaintiff Jacob Ryan Olson's rights and best interests, denied visitation rights to Jeri Olson, his mother and primary caregiver. In defense of their actions, Defendant OSH's employees made false and scurrilous accusations against Plaintiff, including that he had been engaging in sexual contact of an incestuous nature.

9. By this action, among others, the Defendants have demonstrated that they lack either the expertise or the desire to treat Plaintiff's illness. During his commitment, Plaintiff was commonly and routinely placed in locked isolation, and in restraints. During this period, psychotropic medications were forced upon him, he was virtually confined alone in a room for 18 months, he was not permitted to go outside for a breath of fresh air, allowed to go for walks, or even to eat in the common cafeteria.

10. On a virtually daily basis, Plaintiff was forced by Defendants to ingest psychotropic medications, in lieu of receiving meaningful psychotherapy, despite knowing that taking or being forced to take such psychotropic drugs was against said Plaintiff's will, and that he had not given his informed consent to such medication. Plaintiff was provided little to no environmental stimulation, had no normal social interaction, and was - in essence - simply "warehoused" throughout the period of his commitment.

11. The isolation and restraint of Plaintiff was not limited to emergencies or to extraordinary circumstances, nor was it ended at the "earliest possible time", as required by Oregon state law and agency

administrative rules ORS 426.385(1)(m), ORS 426.385 (1)(o), ORS 426.385 (3) and ORS 426.385 (4); OAR 309-112-0017.

12. As example of his circumstances: Plaintiff was kept confined virtually every day, in a barren cell-like room, outfitted with a heavy door that remained locked at all times. The door had a small porthole through which Plaintiff received his food and medication, and by which the OSH staff could briefly communicate with him. This isolated cubicle is where Plaintiff - despite not being convicted of any offense or crime - ate, urinated, defecated, and spent seemingly endless hours staring at the blank walls inside the cell, wholly devoid of environmental stimulation, recreation or entertainment, and normal social interaction, and in short, being managed in conditions which would not be condoned for the worst prisoner in the Oregon penal system.

13. Defendants used or have permitted to be used, medication and isolation as a substitute for treatment and psychotherapy, all in violation of ORS 2015 ORS 426(1)(m); (1)(o);(3); and (4), and in violation of Plaintiff's rights under the ADA. Specifically, Plaintiff was repeatedly and needlessly given a high-risk and atypical antipsychotic medication known as Clozapine, to which he had in the past shown extreme adverse reactions, a fact which was made known to defendants and their employees. The known potential side effects of Clozapine, some of which are serious and potentially fatal, include constipation, bed-wetting, night-time drooling, muscle stiffness, sedation, tremors, orthostatic hypotension, hyperglycemia, and weight gain. Additionally, Clozapine carries five FDA "black box" warnings, including warnings for agranulocytosis, central nervous system depression, leukopenia, neutropenia, seizure disorder, bone marrow suppression, dementia, hypotension, myocarditis, orthostatic hypotension (with or without syncope) and seizures.

14. Plaintiff, as well as his family, advocates, and independent medical professionals, have all observed said Plaintiff's physical, mental, emotional, and psychological decline and deterioration as a result of Defendants' use of the above-described medication, as well as by the other acts and omissions in their care and treatment of Plaintiff. As a result of inadequate and inappropriate treatment, Plaintiff's physical, mental, emotional, and psychological health is worse now than when he initially entered into the care,

custody and control of OSH.

15. As a result of his confinement in frequent, locked isolation, and forced unwanted medication, Plaintiff has suffered injuries including extreme psychological and emotional pain, suffering, and distress, loss of liberty, loss of dignity and opportunity, denial of adequate mental health treatment, consequent deterioration of his mental, emotional, and physical health below the level of functioning he possessed before he was committed at the OSH.

16. During the period of said Plaintiff's commitment, the Defendants failed to ensure that OSH policies and procedures with regard to chemical and mechanical restraint and isolation and personnel management were adhered to, and further failed to supervise, evaluate and correct the unlawful use of seclusion and restraint.

17. Defendants, and each of them, failed in their duty to ensure the OSH staff was properly trained in techniques to prevent escalation and agitated behavior. This failure led directly to the unlawful use of seclusion and restraint against Plaintiff. Defendants also failed to supervise, evaluate and discipline their respective staff members; and failed to conduct a timely investigation of the abuse articulated to them by Plaintiff's mother.

18. In fact, Defendants, in an attempt to derail and de-legitimatize the concerns regarding Plaintiff's care, retaliated against Plaintiff by - among other actions - restricting Plaintiff's rights and liberties by use of punitive measures. Defendants also illegally and fraudulently applied to the Social Security Administration to be appointed payee of Plaintiff's disability benefits, notwithstanding that a payee of Plaintiff's choice, his mother, was already fulfilling that function, in accordance with his wishes. Plaintiff alleges upon information and belief that this latter measure was an artifice to gain both physical and financial control of Plaintiff, so as to deter and deflect his ability to complain about his level of treatment at the hands of Defendants.

19. On or about March 8, 2017, and again on or about April 3, 2017, and again on or about June 6, 2017, while in the care of the state of Oregon, Plaintiff was assaulted and suffered battery with the intentional infliction of bodily contact, causing injuries including but not limited to: bruising, injured ribs,

and injured shoulder.

20. The injuries suffered by Plaintiff were directly attributable to the discriminatory actions of Defendants and each of them, based upon their failure to provide Plaintiff with the proper care and supervision to which he is legally entitled as a Medicare beneficiary and recipient.

21. When the State takes a person into it custody against his will, and holds him in custody against his will, the Untied States Constitution as well as Oregon statute and established principles of common law, impose a corresponding duty upon the State to assume primary responsibility for the person's safety, security and well-being. This is especially true if - as here - the person held has committed no crime; in deed, is not even charged with or suspected of criminal activity.

22. The rationale for this established principle is plain enough: when the State - acting by and through its inherent power - elects to restrain an individual's liberty so that it renders him unable to care for himself, while simultaneously failing to adequately provide for his basic human needs - i.e..: adequate care, security and supervision, dignified and humane treatment, reasonable protection from harm, and freedom from torture and abuse (especially when that torture and abuse is inflicted by the State's own agent and employees) - it transgresses the substantive limits on state action set by the Due Process Clause of the Fourteenth amendment, violates the person's Constitutionally-protected liberty interests, and deprives the individual of his rights under state statutory and common law.

23. The illegal discrimination committed against Plaintiff, has, as a result, robbed Plaintiff of his protected Constitutional and federal and state statutory rights to services which are essential to his physical, emotional and mental well-being, and has caused him to suffer severe emotional distress and loss of self worth.

24. The Defendants in this case, who are charged with the case, security and supervision of mentally ill persons - including Plaintiff - and the employees, agents and other persons responsible for the well-being of mentally ill persons in state custody - again, including Plaintiff - deliberately and maliciously violated these well-established precepts of Constitutional and common law, and these basic tenets of an even minimally-civilized society. Further, Defendants actively interfered with and deflected Plaintiff's and his

advocates' complaints to outside authorities and regulatory agencies, including but not limited to: Adult Protective Services, Oregon Governor's Advocacy Office, OHA Ombudsman, Director of DHS, Director of OHA, Office of Equity and Inclusion, Oregon Medical Board, and Oregon Social Workers Board, all of which have all been redirected to a specific contact employee of OSH, who does not respond meaningfully to the complaints regarding Plaintiff's treatment.

25. As a result of, and directly arising out of the aforesaid illegal discrimination activities, the Defendants committed or caused to be committed or allowed to be committed, numerous torts against the Plaintiff - a mentally ill and vulnerable institutionalized person - including but not limited to: daily maltreatment, degradation, physical assaults, ridicule, defamation, and other forms of inhumane psychological, emotional, and physical abuse, as well intentional infliction of emotional distress and breach of contract, all inflicted by the parties who were responsible for his care and well-being, all as will be more fully set forth below.

## II. JURISDICTION AND VENUE

26. This Court has jurisdiction to hear this complaint and to adjudicate the claims stated herein, by virtue of 28 U.S.C. § 1343(4), which confers original jurisdiction upon this Court in a civil action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, and pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court in a civil action arising under the Constitution or laws of the United States. This action is also brought pursuant to Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 et seq. ("Title I"), as amended from time to time. Plaintiff further asserts claims under the Oregon Revised Statutes and under Oregon common law, for which jurisdiction is based on the doctrine of supplemental jurisdiction. 28 U.S.C. § 1367.

27. Jurisdiction over individual agents of the State of Oregon, in their official capacities, is invoked pursuant to the *ex Parte Young*, 209 U.S. 123 (1908), exception to Eleventh Amendment immunity. For purposes of brevity and clarity, this complaint refers to the individual agents of the Oregon Health Authority (OHA) acting in their official capacity as "Defendant OHA."

28. Venue is proper in the District of Oregon because the discriminatory practices complained of all occurred in the District of Oregon, had their origin or nexus in the District of Oregon, and because the Defendants conduct their regular and sustained business in the District of Oregon within the meaning of 28 U.S.C. § 1391(b) and (c), and because the Defendants can both be found in the District of Oregon.

## III. THE PARTIES

### A. Defendants

29. The Defendant in this action Patrick Allen (hereinafter: "Allen"), is an individual person, serving in his official capacity as Acting Director of the Oregon Health Authority. Defendant Allen is sued individually, and in his official capacity as Acting Director of the Oregon Health Authority.

30. The Defendant Oregon Health Authority (hereinafter "OHA"), is an agency of the State of Oregon, which among other duties, owns and operates the Oregon State Hospital, and employs Defendant Allen.

### B. Plaintiff

31. The Plaintiff in this action, Jacob Ryan Olson, is an individual person, a resident of the State of Oregon, County of Multnomah, and a citizen of the United States.

## IV. SPECIFIC ALLEGATIONS

### A. Plaintiff's First Claim for Relief:

### Discrimination in Social Services Based Upon an Actual or Perceived Disability In Violation of 42 U.S.C. §§ 12101-12213

32. Plaintiff realleges and repleads the allegations set forth in Paragraphs 1 through 25 above, as though said allegations were fully set forth below.

33. At all times material herein, the United States had in effect a set of statutes, known colloquially as the "Americans With Disabilities Act", 42 U.S.C. §§ 12101-12213 (hereinafter "ADA"), which prohibit discrimination in certain public accommodations and functions of public interest, including social services, based upon an actual or perceived disability. Plaintiff Jacob Ryan Olson is a person intended to be protected by said statutes.

34. In July of 2016, Plaintiff was civilly committed to the Oregon State Hospital for a period of 180 days; that civil commitment was extended for an additional 180 days in January of 2017, and Plaintiff was released from the Oregon Sate Hospital on July 14, 2017.

35. During the period of his hospitalization, Plaintiff, both personally and through his mother Jeri Olson, who is and has been his primary caregiver and attorney in fact, made numerous and repeated specific requests regarding his treatment, health and safety.

36. Although Plaintiff made numerous requests, pursuant to the ADA, for reasonable accommodations, his requests were not only not acted upon by Defendants, Plaintiff, and to a lesser extent his mother, were penalized and retaliated against by Defendants.

37. Title II of the Americans With Disabilities Act of 1990 protects individuals against discrimination on the basis of an actual or perceived disability, in the context of health care access under programs and services operated by public entities. In so doing, Title II incorporates and extends the reach of earlier law, Section 504 of the Rehabilitation Act of 1973, by encompassing public entities generally, including not only executive agencies but the legislative and judicial branches of state and local governments and their instrumentalities, regardless of the direct presence of federal funds. Title II sets not only a nondiscrimination standard but also an "equality of opportunity" requirement in publicly operated settings. This equal opportunity obligation can require a more rigorous modification of services than might otherwise be the case; for example, it may require public clinic mental health counselors to be able to communicate in American Sign Language (ASL) rather than the lower standard of requiring mental health counselors without such language skills to be accompanied by translators

38. It is unlawful to discriminate against any applicant for health care access because of his/her disability, or because of a perceived disability. Title II also prohibits both intentional discrimination, as well as neutral policies that disproportionately effect protected persons, and that are not related to legitimate medical care.

39. Title II of the Americans With Disabilities Act of 1990 also requires a public entity to make a reasonable accommodation to the known disability of a qualified applicant or patient.

40. Plaintiff alleges, based upon information and belief, that Defendant Oregon Health Authority is a covered "public entity", within the meaning of Title II.

41. Plaintiff further alleges, based upon information and belief, that said Defendant has a well-documented history of permitting, condoning, and in fact, initiating harassment and personal invective, as well as creating a hostile and threatening environment for persons with disabilities.

42. Pursuant to the provisions of Title II of the Americans With Disabilities Act of 1990, Plaintiff is entitled to an Order of injunctive relief, directing Defendant Oregon Health Authority to make such reasonable accommodations as are necessary to permit Plaintiff to receive appropriate mental health counseling and other appropriate support services, including but not limited to appropriate mental health trauma counseling, funding for a psychiatrist of choice separate from the county employees who have initiated the retaliation of withholding services, and immediate funding for the expenses of in-home care needed to pay the caregivers - including Plaintiff's mother who is a state-certified caregiver - who have been providing 24 hour care to Plaintiff for the past 11 months since his release, in accordance with a care needs evaluation performed by Portland Providence medical Center upon his release from Defendants' custody and control.

. 43. Plaintiff is further entitled to an award of money damages for Defendants' violations of Title II of the ADA, in such reasonable damage amounts as may be set at trial.

**B. Plaintiff's Second Claim for Relief:**

**Intentional Infliction of Emotional Distress**

44. Plaintiff realleges and repleads the allegations set forth in Paragraphs 1 through 25 above as though said allegations were fully set forth below. Plaintiff's Second Claim for Relief is alleged in addition to and not in lieu of Plaintiff's First Claim for Relief.

45. The false statements identified above made by Defendants - particularly those set forth in Paragraph 8 - caused, and were intended to cause extreme emotional distress and suffering to Plaintiff, to damage his standing and reputation with their family and friends, to harm his repute in the community at large, to possibly require Plaintiff's mother to answer to false criminal charges, and in general, to disrupt

Plaintiff's normal live to the greatest extent possible.

46. Defendant's actions, as described above, caused, and were intended to cause extreme emotional distress and suffering to Plaintiff, to prevent him from exercising the his rights of under the ADA, and in fact, to deny him the opportunity for meaningful treatment of his illness.

47. As a reasonable and foreseeable consequence of Defendant's tortious actions, as set forth herein, Plaintiff has been rendered fearful for his fiscal safety, security and well-being, which fears have caused Plaintiff extreme emotional distress and mental anguish, leaving Plaintiff sick, nervous, depressed, anxious, worried, concerned and unable to enjoy peace of mind and a feeling of security, for which Plaintiff should therefore be entitled to a money award against Defendants and each of them in the sum of $200,000, or such other reasonable sums as may be proven at trial, for intentional infliction of emotional distress.

**C. Plaintiff's Third Claim for Relief:**

**Defamation**

48. Plaintiff realleges and repleads the allegations set forth in Paragraphs 1 through 25 above as though said allegations were fully set forth below. Plaintiff's Third Claim for Relief is alleged in addition to and not in lieu of Plaintiff's First or Second Claim for Relief.

49. The statements made by Defendants as referenced in Paragraph 8 above were defamatory and untrue, and have had the result of causing Plaintiff to suffer harm to his personal reputation. Defendants maliciously and wilfully defamed Plaintiff by making statements which Defendants knew to be false. These statements were made with the intent and certain knowledge that they would be disseminated to legal authorities, family members, current and potential medical caregivers and others, causing damage to Plaintiff's personal reputation, and with the further intent and certain knowledge that they would cause Plaintiff to suffer mental anguish and distress.

50. Defendants' statements likewise maliciously and willfully defamed Plaintiff and damaged his good name, character and reputation.

51. Defendants knew, or in the alternative should have known that the statements were false.

52. Plaintiff has not at any time relevant to this matter been a "public official" or a "public

figure" for purposes of the constitutional standards governing liability for defamation.

53 The statements identified above by Defendants are defamatory per se in that they accuse the Plaintiff of one or more actions involving illegal conduct or moral turpitude.

54. The defamatory statements identified above are false.

55. Defendants permitted and encouraged, and continues to permit and encourage, third parties to disseminate and publish the false and defamatory statements identified above;

(a) without reasonable grounds for believing them to be true;

(b) without the exercise of due care to ascertain the true facts; and/or

(c) in reckless disregard of whether the statements were true or false.

56. Defendants also permitted the said dissemination and publication in disregard of Plaintiff's rights and the consequences that these defamatory statements would have on his reputation, livelihood, and good name; and in general, exhibited common-law malice.

57. As a direct, proximate and foreseeable result of the actions of Defendants, as described above, Plaintiff is entitled to a money award against Defendants in the sum of $200,000, or such other reasonable sums as may be proven at trial, for defamatory damages to hisr personal reputation.

**D. Plaintiff's Fourth Claim for Relief:**

**Breach of Contract; Breach of Implied Contract**

58. Plaintiff realleges and repleads the allegations set forth in Paragraphs 1 through 25 above as though said allegations were fully set forth below. Plaintiff's Fourth Claim for Relief is alleged in addition to and not in lieu of Plaintiff's First, Second, or Third Claims for Relief.

59. Despite the involuntary commitment nature of Plaintiff's captivity, a contract for services was nonetheless created, in that Defendant OSH does not provide its services on a gratuitous basis, but rather invoices Plaintiff for the services provided to him, under the legal theory of *quantum meruit*.

60. *Quantum meruit* is legally defined as a quasi-contractual relationship, or a contract inferred in fact. Plaintiff alleges that in every contract there is an implied covenant of good faith and fair dealing which provides that the parties to said agreement will faithfully follow the terms and provisions

required by the contact. Defendant OSH intentionally, knowingly and wilfully breached this covenant of good faith, and failed and refused to afford Plaintiff the care and treatment to which he was legally entitled.

61. Defendant OSH is therefore in material breach of the implied contract for services, and is also in material breach of the implied covenant of good faith and fair dealing, all to Plaintiff's detriment and damage.

62. Defendant OSH's actions were wrongful and wilful, and comprised a breach of the contract for services and of the implied covenant of good faith and fair dealing.

63. As a direct, proximate and foreseeable result of the actions of Defendant OSH, as described above, Plaintiff is entitled to a money award against said Defendant, in the sum of $200,000, or such other reasonable sums as may be proven at trial, for breach of contract and breach of the implied covenant of good faith and fair dealing.

**E. Plaintiff's Fifth Claim for Relief:**

**State Law Claims**

64. Plaintiff realleges and repleads the allegations set forth in Paragraphs 1 through 25 above as though said allegations were fully set forth below. Plaintiff's Fifth Claim for Relief is alleged in addition to and not in lieu of Plaintiff's First, Second, Third, or Fourth Claims for Relief.

65. At all times relevant herein, the State of Oregon had in place a statutory construction of laws, designed to prevent discrimination in the care and services for persons in state institutions, discrimination in places of public accommodation, and to encourage the fullest utilization of the available services and facilities by removing arbitrary standards of perceptions of disabled persons, and to ensure the human dignity of all people therein and protect their health, safety and morals from the consequences of intergroup hostility, tensions and practices of discrimination of any kind based on race, religion, color, sex, marital status or national origin. These statutes are collectively referenced as ORS 659A.001 et seq, and known colloquially as the "Oregon Equality Act". Plaintiff Jacob Ryan Olson is a person designed to be protected by that Act.

66. Defendant's actions as described hereinabove contravened knowing, wrongful and wilful breaches of the above-referenced state statutory constructions prohibiting discrimination based upon disability in the public accommodations and in state institutions.

67. As a direct, proximate and foreseeable result of the actions of Defendants, as described above, Plaintiff is entitled to a money award against Defendants and each of them, in the sum of $200,000, or such other reasonable sums as may be proven at trial, for breach of contract.

**Plaintiff's Sixth Claim for Relief:**

**Punitive and Exemplary Damages**

68. Plaintiff realleges and repleads the allegations set forth in Paragraphs 1 through 25 above as though said allegations were fully set forth below. Plaintiff's Sixth Claim for Relief is alleged in addition to and not in lieu of Plaintiff's First, Second, Third, Fourth, or Fifth Claim for Relief.

69. Plaintiff alleges that the actions complained of herein on the part of Defendants, and each of them, comprised conduct that was so egregiously insidious, that Plaintiff should be awarded punitive damages for Defendants' breaches of the ADA and the Oregon Equality Act (ORS 659A.885), and that this court therefore consider this to be a tort cause of action eligible for punitive damages in the sum of $500,000, or such other reasonable sums as may be proven appropriate at trial.

**Plaintiff's Seventh Claim for Relief:**

**Attorney Fees**

70. Plaintiff realleges and repleads the allegations set forth in Paragraphs 1 through 25 above as though said allegations were fully set forth below. Plaintiff's Seventh Claim for Relief is alleged in addition to and not in lieu of Plaintiff's First, Second, Third, Fourth, Fifth, or Sixth Claim for Relief.

71. 42 U.S.C. § 12205 provides that "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs>"

72. ORS 659A.885 provides that "In any action under this subsection, the court *** may allow the prevailing party costs and reasonable attorney fees at trial."

73. Plaintiff therefore alleges that if he prevails herein, he should be entitled to a money award against Defendants for his reasonably-incurred costs, fees and disbursements herein, including reasonable attorney fees, if any.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief, jointly and severally, against both the Defendants and each of them:

a. Enter a judgment that Defendants' acts and practices as set forth herein are in violation of the laws of the United States and of the State of Oregon;

b. Award Plaintiff damages in the amounts and for the causes set forth in the Complaint;

c. Award Plaintiff the costs of this action, including the fees and costs of experts, together with reasonable attorneys' fees, if any; and

d. Grant Plaintiff such other and further relief as this Court finds necessary and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of fact and damages in this action.

RESPECTFULLY SUBMITTED, this 6th day of July, 2018.

Jacob R. Olson

Jacob Ryan Olson -- Plaintiff Pro Se
9225 NE Thompson Street
Portland, Oregon 97220
(408) 390-9355

**PMG GATEWAY INTERNAL MEDICINE**
1321 Ne 99th Ave Ste 100
Portland OR 97220-9437
Phone: 503-215-4050
Fax: 503-215-4055




February 16, 2016

Re: **Jacob Ryan Olson**
DOB: **7/25/1978**

To Whom It May Concern:

Reviewing patient's prior records shows that he was on Paxil for depression for at least 9 months from 2000 to 2001.

Also should be noted that patient had prior been on clozaril to which he had adverse reactions and did not tolerate.

Family request that appropriate labs and/or imaging studies be done to rule out potential underlying physical cause for his current symptoms.

Sincerely,

Michael C. Bower, MD

repeat warning of the harm of Clozaril

**Oregon State Hospital**
**Continuing Care / Discharge Plan**

☒ Treatment Non-Compliance
☐ Polydipsia
☒ Management of Disruptive Behavior
☒ Trauma

Released with extreme exhaustion can not get out of bed by 3pm Feels like 1/2 his brain is missing

**SUBSTANCE ABUSE**

**Substance Abuse Treatment/Support:** ☒ Recommended *(Check all that apply)* ☐ Not Applicable

☒ Relapse Risk ☒ Drugs ☒ Alcohol ☐ Prescription Drugs
☐ Co-occurring groups/education ☐ Residential Alcohol & Drug Treatment

☐ Agrees to attend treatment upon discharge

Remarks: Jacob reports he's been sober for six years and does not believe he needs A and D treatment.

Force drugged Clozaril

**CLINICAL SYNOPSIS**

Barrier to discharge: Jacob was initially hospitalized after being determined to be unsafe and disruptive in the community, threatening to assault and/or rape others. He was reportedly using alcohol, and being non-adherent to his medications as recommended by his doctors. Hearsay

Progress in treatment: Jacob was found Ready to Transition here at OSH after taking his medications as recommended by his psychiatrist, and stabilizing with diminishing signs of active psychosis and aggression.

Treatment needs and recommendations: Jacob will need on-going psychiatric services and case management. He may also benefit from individual counseling, peer support, and activities treatment. He would likely do best living in structured housing with 24/7 support and supervision should it become available for him. However, he is currently discharging home to his mother and father who can assist in ensuring that Jacob is taking his medications. His next weekly **CBC blood** draw for Clozaril levels is due on **7/19/17** which is arranged through LifeworksNW. He is discharging with 14 days of medications except for Clozaril which will only be for 7 days of medications because he must have a weekly CBC blood draw before he can get his next 7 days of medications. He is also discharging with 4 separate medication vouchers for 14 days a piece (total of 56 days of medications). Per Dr. Read, Jacob is not to use alcohol, marijuana, or any other illegal substances. Lifeworks NW will assess for care needs at his intake assessment on 7/14/17.

**Instructions to Transportation/Community Provider to maintain safety during initial transport and transition:** Normal Safety Precautions.

medication do not interact according to pharmacist

☒ **Patient** ☐ **Authorized representative - Has reviewed the Continuing Care Plan:**

X Jacob R. Olson
Patient Signature

Made Jacob wait 52 days for a group home - County nor State would pay.

**Print Name:** Tyler St. Clair, LCSW

**Social Worker:** [signature]
**Signature**

**Date:** 7/13/17
**Time:** 5:27PM

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by State Law (ORS 179.505) and Federal Law (45CFR, Part 164). You are *prohibited from making further disclosure without specific written consent of the* persons or as otherwise permitted by law.

**ADDRESSOGRAPH**

Both parents are State certified caregivers please enroll parent

File: Behind Face Sheet
Thin: Do Not Thin
OSH STK: 76063 MR 1 – 9/2014

Kept alone in Room 418 (nine months)

**Oregon State Hospital**
**Continuing Care / Discharge Plan**

☒ **EMERGENCY CONTACT** ☐ **GUARDIAN**
Name: Jeri Olson (mother) ☐ **cc DC Summary**
Address: 9225 NE Thompson
City: Portland State: OR County: Multnomah Zip: ____
Phone: 408-390-9355 Fax: ____ Email: ____

**FOLLOW UP SERVICES**
**CCO/Mental Health Case Manager:** LifeworksNW ☐ **N/A** ☒ **cc DC Summary**
Contact Name: Laura Alexander
Phone: 503-288-8066 Fax: ____ Email: ____
Appt. Date/Time: To be determined after intake
Address: 3716 NE Martin Luther King Jr.
City: Portland State: OR County: Multnomah Zip: 97212

**Primary Care Provider:** ____ ☒ **N/A** ☐ **cc DC Summary**
Phone: ____ Fax: ____ Email: ____
Appt. Date/Time: ____
Address: ____
City: ____ State: ____ County: ____ Zip: ____

**Prescriber:** Dr. Star ☐ **N/A** ☒ **cc DC Summary**
503-288-8066 Fax: ____ Email: ____
Appt. Date/Time: 8/4/17 @ 10:30AM
Address: 3716 NE Martin Luther King Jr
City: Portland State: OR County: Multnomah Zip: 97212

**Other Mental Health Provider:** LifeworksNW ☐ **N/A** ☐ **cc DC Summary**
Contact Name: Alise Clark (intake appointment)
503-288-8066 Fax: ____ Email: ____
Appt. Date/Time: 8/4/17 @ 10:30AM
Address: 3716 NE Martin Luther King Jr
City: Portland State: OR County: Multnomah Zip: 97212

**FINANCIAL**
☐ Supplemental Security Income: $____ ☒ Social Security Disability Insurance $866.00
☐ Veterans Administration $____ ☐ Other ____ $____
☐ Medicaid#: ____ ☒ Medicare A QZM8820D ☒ Medicare B ☒ Medicare D: Silverscript: G0124235301
☐ Private Insurance: ____
Payee/Conservator: Jeri Olson Phone: 408-390-9355
Address/Email: ____ Fax: ____
Financial Status and Instructions: ____
Forward funds to: Jeri Olson for Jacob Olson
**NOTE: IT IS IMPORTANT THAT THIS LINE BE FILLED IN EXACTLY AS THE "PAYEE" LINE ON THE CHECK IS TO APPEAR, Name and address.**

CONFIDENTIAL: This information has been disclosed to you from records where confidentiality is protected by State Law (ORS 179.505) and Federal Law (45CFR, Part 164). You are *prohibited from making further disclosure without specific written consent of the* persons or as otherwise permitted by law.

**ADDRESSOGRAPH**

**PMG GATEWAY INTERNAL MEDICINE**
1321 Ne 99th Ave Ste 100
Portland OR 97220-9437
Phone: 503-215-4050
Fax: 503-215-4055




May 7, 2018

Re: **Jacob Ryan Olson**
DOB: **7/25/1978**

To Whom It May Concern:

Jacob has been followed in this clinic since at least 2004. He has a known long-standing history of severe persistent mental illness requiring extensive hospitalization at times. Most recently was hospitalized at Oregon state Hospital and discharged on Clozaril to the care of his family. Jacob has suffered side effects from the current medication and requires consistent monitoring because of known potential adverse effects of Clozaril . Side effects that he has experienced with the medication include dystonia, constipation, increased weight gain, vomiting and perceived decrease in cognitive functioning.

Jacob has had evaluation through Providence occupational therapy and noted that he needs assistance with multiple daily living activities, and transportation to all appointments.

Currently Jacob relies on his family particular his mother particular for medication management and medical history during office visits as well as assistance with daily activities

His disease and medication management has been quite complex. Jacob very much needs to be managed by a psychiatrist that specializes in his disease to assist with medication change as soon as possible to assure the best possible outcome for Jacob.

Patient's mother reports that she and Jacobs father are state certified health caregivers. Jacob very much would like to maintain in the home environment versus group home etc.

Goal of family and patient is to avoid future hospitalizations particularly to state institutions and maintain care in the home environment.

Jacob was discharged from the state hospital on a medication he can not tolerate.

Requesting as much assistance as possible to maintain Jacob at home. Such funding for a psychiatrist and arranging the long-term cargiving services to be put in place to avoid the threat of any segregated or institutional setting which caused added PTSD symptoms and overall deterioration.

Please assist patient and family with the services needed so patient has a higher success rate to remain stabilized.

Sincerely,