IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| JACOB RYAN OLSON, | Case No. 3:18-cv-001208-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| PATRICK ALLEN (in his capacity as Acting Director of the Oregon Health Authority), and OREGON HEALTH AUTHORITY (an agency of the State of Oregon), | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Jacob Ryan Olson ("Olson"), a self-represented litigant, brings this case against Oregon Health Authority ("OHA") Director Patrick Allen ("Allen"), and the OHA (together, "Defendants"), alleging claims for disability discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), intentional infliction of emotional distress, defamation, disability discrimination in violation of Or. Rev. Stat. § 659A.403, and breach of contract. (ECF No. 1.) Olson seeks declaratory relief, injunctive relief, and damages. (Compl. ¶ 2.)

Pending before the Court is Defendants' motion for summary judgment on all of Olson's claims. (ECF No. 26.) The Court has jurisdiction over this case under 28 U.S.C. § 1331, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge under 28 U.S.C. § 636(c). For the following reasons, the Court grants in part Defendants' motion for summary judgment.

## BACKGROUND

Olson alleges that on or about January 22, 2016, he was committed to Portland Adventist Hospital in Portland, Oregon, following civil commitment proceedings in Multnomah County Circuit Court. (Compl. ¶ 5.)

On March 14, 2016, Olson was transferred to the Oregon State Hospital ("OSH") in Salem, Oregon. (Compl. ¶ 5.) On April 4, 2016, several OSH staff injured his ribs and failed to provide medical care for his injuries. (Compl. ¶ 7.) Throughout Olson's time at OSH, hospital staff forced Olson "to ingest psychotropic medications" against his will. (Compl. ¶ 10.)

OSH kept Olson "confined virtually every day, in a barren cell-like room" that was "devoid of environmental stimulation, recreation . . . , and normal social interaction." (Compl. ¶ 12.) As a result of Olson's constant confinement, Olson's physical and psychological health deteriorated. (Compl. ¶¶ 14-15.) Olson was released from OSH's care and custody on July 14, 2017. (Compl. ¶ 5.)

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On a motion for summary judgment, courts must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005) (citations omitted). The court does not assess the credibility of

PAGE 2 – OPINION AND ORDER

witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Although courts must construe liberally the pleadings of self-represented litigants, "an ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (citation omitted).

## II. DISCUSSION

### A. Title II of the ADA

Defendants seek summary judgment on Olson's Title II claim because (1) Olson fails to state a valid claim for relief; and (2) the Eleventh Amendment bars Olson's claim. (Defs.' Mem. at 2.) The Court must first address whether the Eleventh Amendment bars Olson's claim because Ninth Circuit "precedent dictates that [courts] resolve an Eleventh Amendment immunity claim before reaching the merits[.]" *Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012) (citing *In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999)); *see also Norita v. N. Mariana Islands*, 331 F.3d 690, 692 n.1 (9th Cir. 2003) (reviewing a split among the circuit courts and concluding that courts in the Ninth Circuit may not bypass an Eleventh Amendment issue in favor of deciding the case on the merits) (citing *Cardenas v. Anzai*, 311 F.3d 929, 934 n.2 (9th Cir. 2002)).

#### 1. Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the text of the Eleventh Amendment preserves a state's

PAGE 3 – OPINION AND ORDER

sovereign immunity only when it faces suits by citizens of a different state, the Supreme Court has "extended the Amendment's applicability to suits by citizens against their own States." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citations omitted); *see also Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1180 (9th Cir. 2003) (noting that the Eleventh Amendment also applies to "certain actions against state agencies and state instrumentalities") (citation and quotation marks omitted).

Plaintiffs may overcome the Eleventh Amendment bar if Congress abrogates a state's sovereign immunity. *See Garrett*, 531 U.S. at 364 ("Congress may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of its § 5 power.") (citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976)). Congress abrogates a state's sovereign immunity if it (1) "makes its intention to abrogate unmistakably clear in the language of the statute" and (2) "acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment." *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 726 (2003). In 1999, the Ninth Circuit held that that Title II of the ADA meets both requirements. *See Dare v. California*, 191 F.3d 1167, 1175 (9th Cir. 1999) (holding that Title II abrogated state sovereign immunity because it "was a congruent and proportional exercise of Congress' enforcement powers under § 5 of the Fourteenth Amendment").

After *Dare*, the Supreme Court in *Garrett* held that the Eleventh Amendment bars claims under Title I of the ADA, but "left open . . . the question whether the Eleventh Amendment permits suits for money damages under Title II." *Tennessee v. Lane*, 541 U.S. 509, 514 (2004) (citing *Garrett*, 531 U.S. at 360 n.1). In *Lane*, the Supreme Court held that Title II abrogated state sovereign immunity but limited its holding to cases implicating the fundamental right of access to the courts. *See id.* at 531 ("Because we find that Title II unquestionably is valid § 5

legislation as it applies to the class of cases implicating the accessibility of judicial services, we need go no further.") (citation omitted). The Court then extended *Lane*'s holding to all Title II claims that are based on conduct that violates the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.") (emphasis in original). *Georgia* set forth a three-part test to determine whether a Title II claim may proceed against a nonconsenting state: (1) does a state's alleged conduct violate Title II; (2) does the state's alleged conduct also violate the Fourteenth Amendment; and (3) is Congress' abrogation of sovereign immunity valid even if the state's alleged conduct does not violate the Fourteenth Amendment. *Id.*

Defendants argue that *Garrett* and *Lane* require the Court to conduct a claim-by-claim analysis to determine whether the Eleventh Amendment bars Title II claims. (Defs.' Mem. at 7.) The Ninth Circuit's decision in *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791 (9th Cir. 2004) forecloses Defendants' argument.

In *Phiffer*, the state of Oregon appealed the district court's denial of its motion for judgment on the pleadings on the plaintiff's Title II claim based on Eleventh Amendment immunity, arguing that *Garrett* upset prior circuit precedent. The Ninth Circuit disagreed. *Id.* at 793. The Supreme Court then granted certiorari, vacated the prior panel decision, and remanded for further consideration in light of *Lane*. *Id.* at 792. On remand, the *Phiffer* court declined to engage in a case-by-case analysis as to whether the plaintiff's Title II claim implicated a fundamental right, concluding that its "initial resolution of th[e] case is consistent with *Lane*'s holding[.]" *Id.*

Following both *Lane* and *Georgia*, the Ninth Circuit continues to reaffirm its decision in *Phiffer*. *See Okwu v. McKim*, 682 F.3d 841, 845 (9th Cir. 2012) ("Title II abrogates a state's Eleventh Amendment immunity.") (citing *Phiffer*, 384 F.3d at 792); *Daniel v. Levin*, 172 F. App'x 147, 149 (9th Cir. 2006) ("[T]he Eleventh Amendment does not bar ADA or [Rehabilitation Act] suits against state officials in their official capacities for injunctive relief or damages.") (citing *Phiffer*). So do a majority of district courts within the Ninth Circuit.[1] *See, e.g.*, *Karam v. Univ. of Ariz.*, No. 18-cv-00455-RCC, 2019 WL 588151, at *4 (D. Ariz. Feb. 13, 2019) (finding that "[t]he Ninth Circuit has clearly determined that Congress validly abrogated state's immunity under Title II of the ADA") (citing *Phiffer*); *Fernandez v. Rice*, No. 15-cv-00487-LEK, 2017 WL 988103, at *4 (D. Haw. Mar. 14, 2017) (citing *Phiffer* to hold that "Congress has abrogated states' Eleventh Amendment immunity with respect to claims under Title II of the ADA"); *Miller v. Ceres Unified Sch. Dist.*, 141 F. Supp. 3d 1038, 1043 (E.D. Cal. 2015) (declining to determine whether the plaintiff's Title II claim implicated a fundamental right because "the Ninth Circuit has not expressly called for this 'nuanced, case-by-case analysis' to occur") (citing *Phiffer*).

///

///

---

[1] To be sure, some district courts within the Ninth Circuit have conducted the case-by-case analysis Defendants seek here. *See Chadam v. Palo Alto Unified Sch. Dist.*, No. 13-cv-4129-CW, 2014 WL 325323, at *4 (N.D. Cal. Jan. 29, 2014) (analyzing whether the plaintiff's Title II claim implicated a fundamental right); *Talevski v. Regents of the Univ. of Cal.*, No. 13-cv-958-JM, 2013 WL 4102202, at *4 (S.D. Cal. Aug. 13, 2013) (interpreting *Lane* as requiring a case-by-case analysis to determine whether the plaintiff's Title II claim implicated a fundamental right). Both *Chadam* and *Talevski* relied on a concurrence in *Phiffer* stating that it is "open to question whether Title II validly abrogates state sovereign immunity where no such fundamental right is at issue." *Phiffer*, 384 F.3d at 793 (O'Scannlain, J., concurring). However, Judge O'Scannlain acknowledged that *Dare* "control[led] the outcome of th[e] case," and remained binding precedent absent en banc review. *Id.*

Consistent with binding precedent, the Court finds that Title II abrogates Oregon's Eleventh Amendment immunity regardless of whether Olson's claim implicates a fundamental right.

### 2. Merits

The Court next turns to whether Olson has stated a valid claim under Title II. Olson alleges that Defendants violated Title II by failing to provide reasonable accommodations, and seeks injunctive relief in the form of an order directing OHA to provide Olson with funding for in-home care services such as trauma counseling and psychiatric treatment. (Compl. ¶¶ 36, 42.) Olson also seeks compensatory damages. (Compl. ¶ 43.)

Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, activities, of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Title II defines a "qualified individual" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). "To prove that a public service or program violates Title II of the ADA, a plaintiff must show '(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity; (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.'" *Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003) (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).

///

The Supreme Court has made clear that Title II requires the placement of qualified persons with mental disabilities in community settings instead of institutions because the "unjustified institutional isolation of persons with disabilities is a form of discrimination[.]" *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 600 (1999). A state may avoid this obligation only when the requested accommodation "entail[s] a fundamental alteration of the State's services and programs." *Olmstead*, 527 U.S. at 603 (citation, alterations, and quotation marks omitted). Relying on *Olmstead*, Olson argues that a public entity violates Title II "if it fails to provide community services, or reduces those services, in a way likely to cause a decline in health, safety, or welfare, leading to an individual's eventual placement in an institution." (Pl.'s Opp'n at 3.) The Court disagrees.

Although Title II requires states to provide public services in a non-discriminatory manner, it does not require states to create new programs to help disabled persons. *See Olmstead*, 527 U.S. at 603 n.14 ("We do not in this opinion hold that the ADA imposes on the States a standard of care for whatever medical services they render, or that the ADA requires States to provide a certain level of benefits to individuals with disabilities.") (quotation marks omitted); *Townsend*, 328 F.3d at 518 ("It is clear from the language of Title II and the integration regulation that public entities are not required to create new programs that provide heretofore unprovided services to assist disabled persons.") (citation omitted); *see also Rodriguez v. City of New York*, 197 F.3d 611, 619 (2d Cir. 1999) ("Appellees want New York to provide a new benefit, while *Olmstead* reaffirms that the ADA does not mandate the provision of new benefits.").

The record demonstrates that Olson seeks relief from inadequate community mental health services, not from a discriminatory denial of services or unjustified institutional isolation.

PAGE 8 – OPINION AND ORDER

Although Olson previously resided in an institution, it is undisputed that he was released and discharged from OSH in July 2017. (Compl. ¶ 5; Answer ¶ 3.) Furthermore, it is undisputed that OHA provides in-home care only to persons eligible for Medicaid, and that Olson's resources make him ineligible for Medicaid. (Deborah Howard Decl. ¶ 4, Ex. at 1, Nov. 30, 2018 (hereinafter "Howard Decl.")). As a result, the relief Olson seeks goes beyond the ADA's mandate because it would require OHA to create a program that does not currently exist.[2] *See Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *Lane v. Kitzhaber*, 841 F. Supp. 2d 1199, 1207 (D. Or. 2012) (noting that a Title II claim "survives only if it truly alleges a 'discriminatory denial of services' and must be dismissed if it instead concerns the 'adequacy' of the services provided") (quoting *Buchanan v. Maine*, 469 F.3d 158, 174-75 (1st Cir. 2006)). Accordingly, the Court grants Defendants' motion for summary judgment on Olson's Title II claim.

    **B.**    **State Law Claims**

        **1.**    **Defendant OHA**

Defendants also seek summary judgment on Olson's claims for intentional infliction of emotional distress, defamation, disability discrimination under Or. Rev. Stat. § 659A.403, and breach of contract. The Supreme Court has held that the Eleventh Amendment bars all state law claims "brought into federal court [against nonconsenting states] under pendent jurisdiction." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *see also Fogelman v.*

---

[2] Olson's claim for damages under Title II similarly fails because it rests on Defendants' failure to provide adequate mental health treatment, not on Defendants' failure to provide reasonable accommodations. *See Updike v. Multnomah Cty.*, 870 F.3d 939, 951 (9th Cir. 2017) (noting that a public entity may be liable for damages under Title II only "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons") (citation omitted).

*Oregon*, 6:14-cv-02027-MC, 2015 WL 1822911, at *2 (D. Or. Apr. 20, 2015) (dismissing the plaintiff's state statutory claims on Eleventh Amendment grounds); *Drollinger v. Gerber*, No. 09-cv-134-AC, 2011 WL 7154483, at *5 (D. Or. Sept. 12, 2011) (granting summary judgment on the plaintiff's breach of contract claims against the state on Eleventh Amendment grounds), *findings and recommendation adopted by*, 2012 WL 381215 (D. Or. Feb. 6, 2012); *Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004) (granting summary judgment on the plaintiff's tort claims against the state on Eleventh Amendment grounds).³ Although Olson may file his state law claims in state court, they cannot survive in federal court because of the Eleventh Amendment. Accordingly, the Court dismisses without prejudice Olson's state law claims against OHA. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (holding that dismissals on Eleventh Amendment grounds "should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court") (quoting *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988)).

        **2.**     **Defendant Allen**

Olson asserts his state law claims against Allen in his official and individual capacity. (Compl. ¶ 29.) Olson's official-capacity suit against Allen cannot survive in federal court because the Eleventh Amendment also bars state law claims brought against state officials acting in their official capacity. *See Pennhurst*, 465 U.S. at 106 (holding that the Eleventh Amendment bars claims that allege that "state officials violated state law in carrying out their official responsibilities"). Although the *Ex parte Young*, 209 U.S. 123 (1908), exception to the Eleventh

---

³ "[E]ven though the Oregon Tort Claims Act is a waiver of sovereign immunity, it does not waive Eleventh Amendment immunity." *Ross v. Shelton*, 2:18-cv-00045-YY, 2019 WL 846043, at *7 (D. Or. Feb. 21, 2019) (citation, alterations, and quotation marks omitted); *see also Pennhurst*, 465 U.S. at 99 n.9 ("[A] State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in federal courts.").

Amendment allows a plaintiff to assert a claim for prospective injunctive relief against a state official in his official capacity, it applies only to enjoin ongoing violations of *federal* law. *See Pennhurst*, 465 U.S. at 106 (concluding that the *Ex parte Young* doctrine is "inapplicable in a suit against state officials on the basis of state law"); *see also Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 950 (N.D. Cal. 2014) ("[T]he *Ex parte Young* doctrine does not exempt from Eleventh Amendment immunity Plaintiff's state law claims[.]"). Accordingly, the Court dismisses without prejudice Olson's state law claims against Allen in his official capacity.

As to Olson's claims against Allen in his individual capacity, it is undisputed that Allen was not personally involved in any of the conduct on which Olson bases his claims. (Howard Decl. ¶ 2.) Accordingly, the Court grants Defendants' motion for summary judgment on Olson's state law claims against Allen in his individual capacity.

### C. Leave to Amend

Olson requested leave to file an amended complaint "in the event the Court is inclined to grant Defendants' motion[.]" (Pl.'s Opp'n at 7.) As an initial matter, Olson's request violates Local Rule 7-1(b), which states that "[m]otions may not be combined with any response, reply, or other pleading." In any event, Olson's newly proposed claims are futile. *See Johnson v. Buckley*, 356 F.3d 1067, 1078 (9th Cir. 2004) ("Futility alone can justify the denial of a motion to amend.") (citation omitted).

First, Olson fails to state a claim under 42 U.S.C. § 1983 because "Oregon has not waived immunity with respect to § 1983 actions in federal court, and Congress did not intend § 1983 to abrogate a state's Eleventh Amendment immunity." *Bristol v. Peters*, No. 17-cv-00788-SB, 2018 WL 6183274, at *7 (D. Or. Nov. 27, 2018). Second, as discussed above, the Eleventh Amendment bars Olson from litigating his Or. Rev. Stat. § 426.385 claim in federal court, and

Olson's amended Title II claim suffers from the same deficiencies as his original Title II claim. Accordingly, the Court denies Olson's request to amend his complaint.

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion for summary judgment on Olson's ADA claim, GRANTS summary judgment on Olson's state law claims against Allen in his individual capacity, and DISMISSES Olson's state law claims against OHA and Allen in his official capacity without prejudice to refile those claims in state court. (ECF No. 26.) The Court also DENIES AS MOOT Olson's motion for appointment of counsel.[4] (ECF No. 31.)

DATED this 15th day of March, 2019.

*Stacie F. Beckerman*

STACIE F. BECKERMAN
United States Magistrate Judge

---

[4] The Court notes that it has appointed two volunteer attorneys to represent Olson, but one attorney withdrew because of a conflict (ECF No. 10), and one withdrew because of a breakdown in the client relationship (ECF No. 18). The Court further notes that Olson has been able to articulate his claims effectively without the assistance of counsel.